**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RACHEL S. LEVENTHAL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    20-cv-3157** |
| | : | |
| **KILOLO KIJAKAZI,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE**                                        **November 5, 2021**

Plaintiff, Rachel S. Leventhal, brought this action seeking review of the Commissioner of Social Security Administration's decision denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383 (the Act).  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 20) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

**I.       PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB and SSI, alleging disability since December 1, 2012 due to anxiety, depression, pinched nerves, panic attacks, heart problems, and neck and back

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Andrew Saul as the Defendant in this case.

pain.  (R. 147–60, 186, 189).  Plaintiff's applications were denied at the initial level, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 96–106).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the April 22, 2015 administrative hearing.  (R. 33–68).  On July 8, 2015, the ALJ issued a decision unfavorable to Plaintiff.  (R. 10–32).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on November 16, 2016.  (R. 1–5).

Plaintiff filed a complaint with this Court on January 17, 2017.  *Leventhal v. Colvin*, No. 17-cv-00212, Complaint, ECF No. 3.  On September 20, 2018, this Court issued a Report and Recommendation recommending that the matter be remanded to the Commissioner, specifically for reevaluation of Plaintiff's physical impairments.  *Id.*, ECF No. 17.  The District Court approved and adopted the Report and Recommendation on October 12, 2018.  *Id.*, ECF No. 19. The Appeals Council then vacated the first ALJ decision and remanded the claim on December 14, 2018.  (R. 779–80).

A second administrative hearing was held on April 29, 2019.  (R. 658–706).  On June 26, 2019, the ALJ issued a decision unfavorable to Plaintiff.  (R. 635–57).  Plaintiff appealed, and the Appeals Council declined to assume jurisdiction on April 30, 2020, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 628–31).

On June 26, 2020, Plaintiff filed a complaint in the United States Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  The case was initially assigned to the Honorable Judge Timothy R. Rice for disposition, and the parties consented to the jurisdiction of a magistrate judge.  (ECF No. 3; ECF No. 4).  On January 25, 2021, the case was reassigned to me.[2]  (Order, ECF No. 15).  On March 9, 2021, Plaintiff filed a Brief and Statement in Support

_____

[2] On February 26, 2021, Plaintiff filed a new consent form to the jurisdiction of the

of Request for Review.  (Pl.'s Br., ECF No. 20).  On April 10, 2021, the Commissioner filed a Response, and Plaintiff filed a Reply on April 26, 2021.  (Resp., ECF No. 23; Reply, ECF No. 24).

## II.   FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on October 16, 1971, and was forty-one years old on the alleged disability onset date.  (R. 648).  She graduated from high school and completed two years of college.  (R. 190).  Plaintiff previously worked as a support analyst, an account executive/customer service worker, and a receptionist/cashier in a car dealership.  (R. 27, 191).

### A.   Medical Evidence[3]

During the relevant time period, Plaintiff treated for anxiety and depression at Family Services Association of Bucks County.  (R. 440–578).  On April 9, 2014, she presented with depression, panic attacks, anger, and uncontrolled moods.  (R. 524–25, 549).  Plaintiff reported living in a trailer with her two children and, intermittently, with the father of her children.  *Id.*  According to Plaintiff, she supervised her daughter's online homeschooling, walked her dog for

---

magistrate judge.  (ECF No. 19).  However, neither box on the form was checked.  Since consent was previously given, and neither party has declined consent, this Court will exercise jurisdiction in this case.  *See also* ECF No. 4 ("Failure to **complete** and submit this Consent/Declination Form within twenty-one (21) days may be deemed consent to the jurisdiction of a Magistrate Judge, and the Magistrate Judge will exercise jurisdiction for all purposes under 28 U.S.C. 636(c).") (emphasis added).

[3]  In her application for disability benefits, Plaintiff alleged both physical and mental impairments.  However, her current Request for Review concerns only the ALJ's findings regarding her mental impairments.  Accordingly, the Court will not address Plaintiff's physical impairments at this time.

relaxation, and spent time with members of her 12 Step Program.  (R. 525, 534).

At Family Services Association, Plaintiff treated primarily with psychiatrist Randi L. Mittleman, M.D. and therapist Claudia Rosenberg, Ph.D.  Dr. Rosenberg completed a mental status exam of Plaintiff on April 9, 2014.  (R. 524–34).  Upon examination, she found that Plaintiff made good eye contact and appeared friendly, hyperactive, agitated, anxious, and oriented in all spheres.  (R. 529).  She described Plaintiff as exhibiting appropriate thought content, normal speech and psychomotor activity, logical thought processes, intact memory, fair insight, judgment, and impulse control, and good control of psychiatric symptoms.  *Id.*  Based on her examination, Dr. Rosenberg diagnosed Plaintiff with panic disorder and major depressive disorder.  (R. 534).  An initial treatment plan completed by Dr. Rosenberg determined that Plaintiff could be treated with "outpatient therapy and medication management."  (R. 577).  She noted that Plaintiff showed "no risk factors at this time or concerns that suggest a higher level of treatment is required."  *Id.*

On April 25, 2014, Dr. Mittleman, M.D. of Family Services Association conducted a psychiatric evaluation of Plaintiff.  (R. 515–23).  Dr. Mittleman described Plaintiff as appropriately dressed and groomed, cooperative, pleasant, goal directed, and oriented in all spheres.  (R. 521).  She noted that Plaintiff appeared depressed, anxious, angry, and sad, and exhibited constricted but appropriate affect, logical and goal-directed thought process, good memory, and fair insight and judgment.  *Id.*  Dr. Mittleman diagnosed Plaintiff with major depressive disorder and polysubstance dependence, and prescribed Wellbutrin, Lexapro and Klonopin for depression and anxiety.  (R. 522).

Plaintiff continued to receive outpatient therapy and medication management on a consistent basis through early 2015.  (R. 440–578).  On March 25, 2015, treating psychiatrist Dr.

Mittleman completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental).  (R. 579–80).  Dr. Mittleman opined that Plaintiff had extreme limitations in her ability to: perform at a consistent pace without an unreasonable number and length of rest breaks; deal with the stress of skilled or semi-skilled work; and use public transportation.  *Id.*  She assessed marked limitations in Plaintiff's ability to: remember work-like procedure; maintain attention for 2-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination or proximity to others without being unduly distracted; complete a normal workday or work week without interruptions from psychologically based symptom; deal with normal work stress; carry out detailed instructions; set realistic goals or make plans independently of others; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and travel in unfamiliar places.  *Id.*  Dr. Mittleman also found that the claimant had moderate limitations in her ability to carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; and interact appropriately with the general public.  *Id.*  Dr. Mittleman concluded that Plaintiff would be absent from work more than three times a month.  (R. 580).

Dr. Mittleman also completed an Interrogatory dated March 25, 2015.  (R. 581).  In her Interrogatory response, Dr. Mittleman opined that Plaintiff suffers from a "medically documented history of a chronic organic mental, schizophrenic, etc. or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and "a residual disease process that has resulted in such marginal adjustment that even a minimal

increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." *Id.*

On April 13, 2015, Plaintiff's therapist, Dr. Rosenberg, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (R. 582–84). She assessed Plaintiff with moderate to marked limitations in her ability to: understand, remember, and carry out short, simple, or complex instructions; make judgments on simple and complex work-related decisions; interact appropriately with the public, coworkers, and supervisors; and respond appropriately to usual work situations and to changes in routine work settings. (R. 582–83). She further noted that "multistep instructions" and "problem solving" caused Plaintiff to experience stress and panic attacks. *Id.*

Dr. Rosenberg also completed an Interrogatory with her April 13, 2015 Medical Source Statement. (R. 585). In her Interrogatory response, she opined that Plaintiff suffers from a "medically documented history of a chronic organic mental, schizophrenic, etc. or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and "repeated episodes of decompensation, each of extended duration." *Id.*

On November 26, 2018, Dr. Christopher Patrone, Psy.D., completed a mental status evaluation of Plaintiff. (R. 1219–23). Plaintiff reported that she drove approximately 25 miles to the evaluation, and that she was residing at a shelter with her son and working on a part-time basis. (R. 1219). She reported difficulty falling asleep, depressive symptomatology including dysphoric moods, psychomotor retardation, hopelessness, loss of usual interests, irritability, social withdrawal, concentration difficulties, diminished self-esteem, fatigue, and loss of energy,

though she denied feeling suicidal.  (R. 1220).  She also reported excessive apprehension and worry, hypervigilance, avoidance behaviors, intrusive thoughts, and panic attacks.  *Id.*  Dr. Patrone found Plaintiff to be cooperative, with adequate manner of relating, social skills, and overall presentation.  (R. 1221).  Her appearance and grooming were satisfactory, and her thought process was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.  *Id.*  Dr. Patrone found her affect to be depressed, and her attention and concentration mildly impaired due to focusing issues.  (R. 1221–22).  He found her recent and remote memory skills to be intact, her insight fair, and her judgment fair.  (R. 1222).  Dr. Patrone diagnosed Plaintiff with unspecified bipolar and related disorder, unspecified anxiety disorder, and substance use disorder, although he ruled out post-traumatic stress disorder.  (R. 1222–23).  He recommended that Plaintiff continue with her current psychological and psychiatric treatment.  (R. 1223).  Dr. Patrone's prognosis was fair provided Plaintiff sustain treatment, and he found that she would be able to manage her own funds.  *Id.*

From February 2018 until March 2019, Plaintiff treated with Progressions Behavioral Health Services (Progressions).  (R. 1277–1304).  She initially sought treatment due to her struggles with parenting and relationships, reporting that she had not had a shower in two months and that she was experiencing anxiety and depression.  (R. 1299–1301).  On May 17, 2018, Dr. Jeffrey Simon conducted a psychiatric evaluation of Plaintiff, where she reported that her medication was effective and that her anxiety was manageable.  (R. 1296).  Dr. Simon diagnosed her with unspecified adjustment disorders, and recommended that she continue with her medication.  (R. 1297).  On May 31, 2018, Plaintiff reported in her treatment plan that her medication was helping with her condition.  (R. 1291).

On April 4, 2019, Dr. Simon completed a medical opinion regarding Plaintiff's ability to do work-related activities. (R. 1305–08). Dr. Simon checked boxes indicating that Plaintiff's abilities were limited but satisfactory in: carrying out short and simple instructions; maintaining attention for a two hour segment; sustaining an ordinary routine without special supervision; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and interacting appropriately with the general public. (R. 1305). He found Plaintiff's abilities to be seriously limited in: remembering work-like procedures; understanding and remembering short and simple instructions; maintaining regular attendance and being punctual; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; responding appropriately to changes in a routine work setting; being aware of normal hazards and taking appropriate precautions; and adhering to basic standards of neatness and cleanliness. *Id.* Finally, he found Plaintiff's abilities unable to meet competitive standards in: completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress. *Id.* Dr. Simon also explained that Plaintiff would have difficulty working at a regular full-time job on a sustained basis because she was "experiencing multiple high stressors, emotional, financial, trying to maintain sobriety. [Plaintiff] requires multiple medication regimen and treats for mood disorder, including symptoms of agitation & low frustration tolerance. [Plaintiff] can be emotionally reactive and is triggered by issues discussed in intensive therapy." (R. 1306). He estimated that Plaintiff's impairments would cause her to be absent from work more than three days per month. *Id.*

Dr. Simon also completed an interrogatory on the same date, in which he checked boxes indicating "yes" when asked if Plaintiff had a medically documented history of a mental disorder over a period of at least two years and there was evidence of both medical treatment, mental health therapy, psychosocial support, or a highly structured setting that was ongoing and diminished her symptoms and signs of mental disorder, and marginal adjustment, i.e. minimal capacity to adapt to changes in the environment or to demands that are not already a part of daily life. (R. 1307). To explain his answers, Dr. Simon noted that Plaintiff was on a multiple medication regime for mood disorder, depression, and anxiety, and asserted that Plaintiff "is triggered by abrupt transition or change." *Id.*

**B.     Non-Medical Evidence**

The record also contains non-medical evidence. In an Adult Function Report dated September 5, 2013, Plaintiff noted that she continued to care for her two children, prepare meals, complete household tasks such as cleaning and laundry, shop for groceries, maintain personal finances, read, and attend recovery meetings. (R. 198, 200–04). Plaintiff reported going outside every day and driving independently. (R. 201).

At the April 29, 2019 administrative hearing, Plaintiff testified that she was working part-time as a delivery driver, and had previously worked as a customer service agent, estimator, tech support, cashier, and weigh master. (R. 665–69). She reported feeling tiredness and pain in her back and neck area, as well as having trouble thinking and keeping track of what she was doing. (R. 669–70). She stated that she currently lived with her son, and that her daughter and the father of her children no longer lived with her. (R. 670–71). Plaintiff reported that she was able to take care of both children while they were living with her, and that their at-home therapy made it easier to do so. (R. 672, 691–92). Regarding her mental state, Plaintiff reported that there are

times when she feels better, but circumstances in her life cause her symptoms to worsen.  (R. 682).  She stated that her moods would "flip flop," causing her to go into rages.  (R. 684).  She also stated that she can usually control her mood while on medication.  (R. 685–86).  Plaintiff testified that her anxiety would come and go, but was not as bad as it was previously due to being managed with medication.  (R. 689).

### III.    ALJ'S DECISION

Following the second administrative hearing held on April 29, 2019, the ALJ issued a decision in which she made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since December 1, 2012, the alleged onset date.

3.    The claimant has the following severe impairments: disorders of the spine, fibromyalgia, anxiety, depression, migraines, obesity and asthma.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except sit 8 hours out of 8, stand 3 hours out of 8, and walk 3 hours out of 8.  There are no limitations to hand use.  Claimant could occasionally climb, stoop, kneel, balance, crouch and crawl.  Claimant

cannot climb ladders, ropes or scaffolds, or work near unprotected heights. Claimant could frequently use motor vehicles and moving machinery. Claimant is limited to unskilled, simple, routine tasks, simple decisions, occasional change in workplace, occasional contact with work supervisor and no direct public contact. Claimant should avoid concentrated exposure to extreme heat and cold, dust, odors, wetness, gases, and fumes and poorly ventilated areas; and is limited to moderate exposure to noise.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was born on October 16, 1971 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2012, through the date of this decision.

(R. 640–49). Accordingly, the ALJ found Plaintiff was not disabled. (R. 649).

11

## IV.   LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In her request for review, Plaintiff raises four claims: (1) the ALJ improperly rejected Dr. Simon's medical opinion; (2) the ALJ failed to address the medical opinions of Dr. Mittleman and Dr. Rosenberg regarding Plaintiff's functional abilities; (3) the ALJ improperly rejected the opinions of Dr. Mittleman and Dr. Rosenberg that Plaintiff met the requirements for a listing; and (4) the ALJ failed to present all of Plaintiff's credibly-established limitations in her hypothetical question to the vocational expert.  (Pl.'s Br., ECF No. 20, at 6–21).  I find that substantial evidence supports the ALJ's Step Three determination and her evaluation of Dr. Simon's opinion, but that the ALJ failed to explain her reasoning for rejecting Dr. Mittleman and Dr. Rosenberg's opinions on Plaintiff's functional abilities.[4]

### A.    Listings

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Mittleman and Dr.

---

[4]  Because I recommend remand for consideration of medical opinion evidence that may impact the RFC assessment, I will not address Plaintiff's argument that the ALJ failed to include all of Plaintiff's credibly-established limitations in her hypothetical question to the vocational expert.  It is possible that, on remand, the ALJ may reach different conclusions as to RFC, resulting in an entirely new hypothetical to the VE.

13

Rosenberg that Plaintiff met the requirements for listing § 12.04(A) and (C).  (Pl.'s Br., ECF No. 20, at 18–19).  Plaintiff argues that the ALJ rejected these opinions for improper reasons.  *Id.* at 19.

Plaintiff bears the burden at Step Three of demonstrating the requisite severity of a listed impairment.  *Bowen*, 482 U.S. at 146 n.5 (1987).  Moreover, to meet a Listing, a claimant must show that all the criteria of that listing are met.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Meeting only some criteria of a Listing "no matter how severely, does not qualify."  *Id.*  An impairment cannot meet the criteria of a Listing based only on a diagnosis.  20 C.F.R. § 416.925(d).  Because matching or equaling a listing at step three results in an automatic finding of disability, the listings are strictly construed against claimants.  *See Sullivan*, 493 U.S. at 530-32.

Here, the ALJ identified Listings 12.04 (depressive, bipolar and related disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, and 12.06 (anxiety and obsessive-compulsive disorders), 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.06 as relevant to Plaintiff's mental health impairment, but found her impairments were not severe enough to meet those listings.  (R. 641–43).[5]  A claimant may satisfy the "C" criteria of Listing 12.04 by showing that the claimant's mental disorder is "serious and persistent;" that is, that the claimant has a medically documented history of the existence of the disorder over a period of two years, and there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder, and (2)

---

[5]  In her Request for Review, Plaintiff does not contest the ALJ's findings that Plaintiff did not meet the "B" criteria of Listings 12.04 and/or 12.06.  (Pl.'s Br., ECF No. 20, at 18–20; Reply, ECF No. 24, at 6 ("Plaintiff has never contended that she meets the B criteria, only that she meets the C criteria of the listings.")).  Accordingly, this Court will focus its analysis on the ALJ's assessment of the "C" criteria only.

marginal adjustment; that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life.  § 12.04(C).

In her decision, the ALJ analyzed whether Plaintiff met the paragraph "C" criteria.  She determined that there was no evidence that Plaintiff has ever had a decompensation or hospitalization due to depression, anxiety, or bipolar disorder, and noted that Plaintiff continued to work part-time.  (R. 642).  The ALJ also addressed Dr. Mittleman and Dr. Rosenberg's medical interrogatories, in which they found Plaintiff satisfied paragraph C, as follows:

> The undersigned finds treatment notes do not support these findings.  The medical record shows [Plaintiff] had significant stress at times.  She has a son with rage issues.  She had a daughter with mental health problems and then home schooling.  At one point, [Plaintiff] had bed bugs.  She was also living in a shelter at one point.  She continued to care for her son while living in the shelter without help.  Even with these stressors, [Plaintiff] maintained her home, shopping, cleaning and attending appointments and worked part-time.  She testified that she was able to keep up with her children's appointments and their academic regimen.  She did not decompensate despite all of these stressors.

(R. 642–43).  Therefore, the ALJ concluded that the paragraph C criteria were not satisfied.  (R. 643).

Additionally, while discussing her RFC assessment, the ALJ noted that she had given no weight to the interrogatories completed by Dr. Mittleman and Dr. Rosenberg because their findings that Plaintiff met listing level severity were not consistent with the medical record showing Plaintiff was able to care for her children, sponsor individuals through AA, and care for a friend's daughter while working part-time.  (R. 647–48).

Substantial evidence supports the ALJ's conclusion that Plaintiff did not meet or medically equal the listings.  As the ALJ explained, Plaintiff was able to care for both of her children during the relevant period, managing their education and attending their medical

appointments.  (R. 641, 1005–1204).  Plaintiff had also cared for a friend's daughter, served as a sponsor for several members of Alcoholics Anonymous, and also worked part-time as a delivery driver during the relevant period.  (R. 662, 665).  Plaintiff's treatment notes reflect that she went five months without mental health treatment and had no hospitalizations or decompensations, and that on several occasions she had no complaints from her depression, bipolar disorder, or anxiety.  (R. 992, 1008, 1062).

Plaintiff relies on the interrogatories completed by Dr. Mittleman and Dr. Rosenberg opining that Plaintiff's condition was severe enough to meet the "C" criteria of Listing 12.06. (Pl.'s Br., ECF No. 20, at 19).  However, substantial evidence supports the ALJ's finding that the record did not support these findings.  As the ALJ noted, Plaintiff was able to maintain her home, shop, clean, attend appointments, care for her children, manage their appointments and educational needs, and work part-time, all while under significant stress.  (R. 662, 665, 1005– 1204).  Further, Plaintiff did not decompensate during the relevant period despite these stressors. (R. 649).  The ALJ accordingly found that Dr. Mittleman and Dr. Rosenberg's opinions that Plaintiff's impairments met the "C" criteria were not supported by the rest of the record.

Because substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.04 or 12.06, Plaintiff's request for relief on this issue will be denied.

### B.     Consideration of Medical Evidence[6]

Plaintiff argues that the ALJ erred by failing to credit the medical opinions given by Dr. Simon, Dr. Mittleman, and Dr. Rosenberg.  (Pl.'s Br., ECF No. 20, at 6–18).

---

[6]  The Social Security regulation related to evaluation of medical evidence was amended effective March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed.Reg. 584401 (Jan 18, 2017).  Because Plaintiff filed her application for benefits prior to that effective date, the Court will employ the standards in effect at that time.

### 1.      Dr. Simon's Medical Opinion

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of Dr. Jeffrey Simon, who treated Plaintiff for her mental impairments.  (Pl.'s Br., ECF No. 20, at 8–10). Plaintiff asserts that the ALJ rejected Dr. Simon's opinion for improper reasons.  *Id.* at 11–12.

The ALJ alone is responsible for making the disability determination.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  In making that determination, the ALJ is "free to accept some medical evidence and reject other evidence," so long as she "provides an explanation for discrediting the rejected evidence."  *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014); 20 C.F.R. §§ 404.1527, 416.927.  Generally, "opinions of [Plaintiff's] treating physician are entitled to substantial and at times even controlling weight."  *Fargnoli*, 247 F.3d at 43; *see also* 20 C.F.R. § 404.1527(d)(2).  However, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000), and may choose which medical opinions to credit.  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  The ALJ may also give more or less weight to a treating physician's opinion based on: (1) the length of the treatment relationship and frequency of examination; (2) nature and extent of examination; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the treating source's specialization; and (6) any other relevant factors.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Regardless of what weight the ALJ assigns to medical opinions, the ALJ must adequately explain the evidence she rejects or affords lesser weight.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009).  "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review."  *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119-20 (3d Cir. 2000).

Here, the ALJ assigned little weight to Dr. Simon's opinion.  (R. 647).  She found the opinion to be "overly restrictive and not supported by mental health treatment notes that show [Plaintiff] is able to care for her two children on the autism spectrum, care for a friend's child and sponsor multiple people at AA while also working part-time."  *Id.*

Substantial evidence supports the ALJ's decision to assign little weight to Dr. Simon's opinion.  Plaintiff's treatment notes with Dr. Simon and Progressions indicate that her anxiety was consistently "manageable," and that her medication was helping.  (R. 1279–96).  During a psychiatric evaluation with Dr. Simon, Plaintiff denied any symptoms of major depressive disorder, mania, or PTSD, and reported sleeping well.  (R. 1296).  Additionally, as the ALJ explained, Plaintiff's reported activities contradict the restrictions imposed by Dr. Simon. Plaintiff testified that, before her daughter moved away, she was able to care for both of her children, who are on the autism spectrum.  (R. 672, 691–92).  She also cared for a friend's daughter and served as a sponsor for several members of Alcoholics Anonymous.  (R. 1005– 1204).  She testified to working part-time as a delivery driver during the relevant period, and also to having worked part-time as a customer service agent, estimator, tech support, cashier, and weigh master.  (R. 665–69).

Plaintiff argues that the ALJ erred by assigning Dr. Simon's opinion little weight, asserting that the ALJ improperly reached a lay conclusion that fulfilling the duties of a parent and working part-time were equivalent to working full-time.  (Pl.'s Br., ECF No. 20, at 10–13). However, activities of daily living and evidence of part-time work are both relevant factors that the ALJ is permitted to consider in forming her RFC.  20 C.F.R. § 404.1545(a); *Burnett*, 220 F.3d at 121–22; 20 C.F.R. §§ 404.1571, 416.971; *Sprowls v. Astrue*, No. 11-0698, 2012 WL 832891, at *15 (W.D. Pa. 2012) ("Work that an individual seeking disability benefits has

completed since the onset of disability may show that he or she is able to engage in work at the substantial gainful activity level.").  The ALJ did not, as Plaintiff claims, reach the lay conclusion that childcare and part-time work equated to the ability to perform full-time work; rather, she considered Plaintiff's ability to do these things as factors in her evaluation of Dr. Simon's opinion, and ultimately found that the opinion's restrictive limitations were inconsistent with such a level of activity.  Further, the ALJ properly found Dr. Simon's opinion to be inconsistent with his own treatment notes, which documented that Plaintiff's anxiety was well-managed on medication and that she had no complaints of depression, mania, or PTSD.  *See Mari v. Berryhill*, No. 15-5093, 2017 WL 6209233, at *5 (E.D. Pa. 2017) ("The ALJ permissibly reasoned … that the [treating source opinion] was not supported by his own clinical notes and thus was appropriately discredited.") (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)).

Accordingly, I find that substantial evidence supports the ALJ's decision to afford Dr. Simon's opinion little weight.  Plaintiff's request for relief on this issue will be denied.

### 2.     Dr. Mittleman & Dr. Rosenberg's Medical Source Statements

Plaintiff next argues that the ALJ failed to address Dr. Mittleman's or Dr. Rosenberg's opinions regarding Plaintiff's functional limitations.  (Pl.'s Br., ECF No. 20, at 16).  Instead, Plaintiff asserts that the ALJ focused solely on their answers to interrogatories opining that Plaintiff's impairments met the listing requirements under § 12.04(C)(2).  *Id.*  In response, the Commissioner does not argue that the ALJ was not required to explain her evaluation of Dr. Mittleman and Dr. Rosenberg's medical source statements.  (Resp., ECF No. 23, at 8).  Rather, the Commissioner argues only that the ALJ did address the functional limitations they assessed in her step three explanation.  *Id.*

19

The ALJ wrote in her decision that she gave no weight to the opinions of Dr. Mittleman and Dr. Rosenberg. (R. 647). The ALJ explained that these physicians "found [Plaintiff's] anxiety met listing level severity under Part C2. This is not consistent with the medical record that shows [Plaintiff] has some limitations, but was able to care for her two children on the autism spectrum, sponsor people at AA and care for a friend's daughter while working part-time." (R. 647–48). In her step three evaluation, the ALJ found Plaintiff to have a moderate limitation with regard to concentrating, persisting, or maintaining pace. (R. 642). She based these findings on Dr. Mittleman and Dr. Rosenberg's reports that Plaintiff "has anxiety, financial, and family stressors that limit her ability to concentrate and cope." *Id.* She also referenced Dr. Mittleman and Dr. Rosenberg's medical source statements by noting that "[t]hey have reported [Plaintiff] is limited to simple instructions and will not be able to maintain pace or problem solve." *Id.*

In a previous Report and Recommendation, this Court found that substantial evidence supported the ALJ's initial decision to afford the opinions of Dr. Mittleman and Dr. Rosenberg no weight, but ordered remand on other grounds.[7] *See Leventhal v. Berryhill*, No. 17-cv-00212, Report and Recommendation (E.D. Pa. 2018) (ECF No. 17) (approved and adopted by the Honorable Nitza I. Quinones Alejandro, 2018); R. 759–76. After the matter was remanded to the Commissioner, the Appeals Council vacated the ALJ's initial decision. (R. 779–81). Once

---

[7] There is no clear precedent in this circuit as to whether a court may read judicially-upheld portions of a previous ALJ's decision together with the decision under review. *See Staab v. Berryhill*, No. 16-1798, 2018 WL 783687 (W.D. Pa. 2018). In *Butterfield v. Astrue*, the U.S. District Court for the Eastern District of Pennsylvania found that an ALJ has no legal obligation to review previously-decided issues *de novo* "[a]bsent either a remand order flagging the issue or some other showing by Plaintiff that the ALJ's finding … was erroneous." No. 06-0603, 2010 WL 4027768, at *5 (E.D. Pa. 2010). However, because the Commissioner does not argue that the second ALJ was not required to address Dr. Mittleman and Dr. Rosenberg's functional opinions, the Court will not decide this issue.

vacated, the new ALJ was required to issue a new decision and consider all pertinent issues *de novo*. *See Butterfield v. Astrue*, No. 06-0603, 2010 WL 4027768 (E.D. Pa. 2010) (quoting HALLEX 1-2-8-18 (S.S.A. 2006)); (R. 781).

The Commissioner is silent on the issue of whether the ALJ was required to consider Dr. Mittleman and Dr. Rosenberg's medical source statements as part of her decision.  Instead, the Commissioner addresses the merits of Plaintiff's claim asserting that her reference to those opinions at step three is sufficient explanation for her decision to afford them little weight.  I disagree.  In her decision, the ALJ discussed the opinions of Dr. Mittleman and Dr. Rosenberg only in terms of their relevance to Plaintiff's ability to meet a listing.  (R. 642, 647–48).  While it is true that she referenced the medical source statements as part of her step three finding, she did not assign weight to or explain her rejection of the statements in determining Plaintiff's RFC.  This failure to consider Dr. Mittleman and Dr. Rosenberg's opinions on Plaintiff's functional limitations was in error.  Because the ALJ did not in any way explain the weight given to these opinions, the Court cannot discern whether the ALJ rejected the functional limitations assessed by Dr. Mittleman and Dr. Rosenberg for "no reason of the wrong reason."  *Rutherford*, 399 F.3d at 554; *see also Fargnoli*, 247 F.3d at 41-44; *Cotter*, 642 F.2d at 705-707.  Even if the ALJ disagreed with Dr. Mittleman and Dr. Rosenberg, she was not at liberty to simply ignore such substantial portions of their medical opinions.  *Burnett*, 220 F.3d at 121-122.

Accordingly, Plaintiff's request for remand is granted based on the ALJ's failure to discuss, consider or provide an explanation for discounting the medical source statements of Dr. Mittleman and Dr. Rosenberg.

**VI.     CONCLUSION**

For the foregoing reasons, I find that the ALJ erred by failing to assign weight to or explain her rejection of the functional opinions assessed by Dr. Mittleman and Dr. Rosenberg. Accordingly, Plaintiff's request for review is **GRANTED** to the extent that it requests remand. This matter is remanded to the Commissioner for further proceedings.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge